**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MARIE LILLY, Individually and as a Representative of the Estate of Edna Spells, | § § § § | |
| Plaintiff. | § § | CIVIL ACTION NO. 4:20-cv-03478 |
| VS. | § § | |
| SSC HOUSTON SOUTHWEST OPERATING COMPANY LLC, | § § § § | |
| Defendant. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is Defendant SSC Houston Southwest Operating Company LLC's Motion for Summary Judgment. *See* Dkt. 26. Having reviewed the briefing, the record, and the applicable law, I recommend that the motion be **DENIED**.

## BACKGROUND

The Westchase Health and Rehabilitation Center ("Westchase") is a skilled nursing and rehabilitation center operated by Defendant SSC Houston Southwest Operating Company LLC ("SSC"). Edna Spells ("Spells") became a resident at Westchase in August 2011.

In the early part of 2020, the COVID-19 pandemic quickly overwhelmed American society. We experienced a public health nightmare, faced unprecedented lockdowns, and witnessed widespread business failures. Thousands upon thousands of our fellow citizens died from this dreaded virus. One of those individuals was Spells.

Spells took a COVID-19 test on April 20, 2020. Two days later, on April 22, the test results came back positive. Spells was taken by ambulance to Memorial

Hermann Southwest Hospital on April 24, where she passed away the very next day. The death certificate lists her cause of death as COVID-19.

Plaintiff Marie Lilly, individually and as a representative of Spells's estate, filed this lawsuit in Texas state court, alleging state-law medical negligence claims against SSC. The case was timely removed to federal court on the basis of federal question and diversity jurisdiction. The thrust of the lawsuit is that SSC failed to properly monitor and care for Spells, which ultimately led to her exposure to, contraction of, and death from COVID-19. More specifically, the lawsuit alleges that SSC was negligent in its care, treatment, and provision of services to Spells. In particular, the lawsuit claims that SSC:

a. Fail[ed] to institute an infection control program;

b. Fail[ed] to implement an infection control program;

c. Fail[ed] to observe, intervene, and care for EDNA SPELLS;

d. Neglect[ed] EDNA SPELLS to such a degree that she was exposed to COVID-19;

e. Fail[ed] to provide the medical and nursing care reasonably required for [Spells] known conditions[; and]

f. Fail[ed] to provide the appropriate supervision and training to its staff and personnel that were providing care to [Spells] including appropriate care related to EDNA SPELLS' treatment needs at all relevant times.

Dkt. 1-2 at 5–6.

SSC has filed a Motion for Summary Judgment, arguing that the Public Readiness and Emergency Preparedness Act ("PREP Act"), 42 U.S.C. §§ 247d-6d and 247d-6e, provides it with immunity from Plaintiff's claims.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of

the nonmovant. *See Rodriguez v. Webb Hosp. Corp.*, 234 F. Supp. 3d 834, 837 (S.D. Tex. 2017).

To survive summary judgment, the nonmovant must "present competent summary judgment evidence to support the essential elements of its claim." *Cephus v. Tex. Health & Hum. Servs. Comm'n*, 146 F. Supp. 3d 818, 826 (S.D. Tex. 2015). The nonmovant's "burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quotation omitted). Rather, the "nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim." *Brooks v. Houston Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 584 (S.D. Tex. 2015). In ruling on a motion for summary judgment, I must construe "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020).

## ANALYSIS

Enacted in 2005, the PREP Act provides broad immunity to entities and individuals responding to a national public health emergency.[1] The key provision of the statue provides as follows:

> [A] covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration

---

[1] The PREP Act further authorizes a compensation fund designed to provide "timely, uniform, and adequate compensation" through a no-fault claims process for injuries or deaths "directly caused by the administration or use of a covered countermeasure." 42 U.S.C. § 247d-6e(a). The sole statutory exception to PREP Act immunity is for claims of willful misconduct causing death or serious injury. *See id.* § 247d-6d(d)(1). Such claims must be filed in the United States District Court for the District of Columbia. *See id.* § 247d-6d(e)(1).

> [by the Secretary of Health and Human Services ("HHS")] has been issued with respect to such countermeasure.

42 U.S.C. § 247d-6d(a)(1). A "covered person" includes manufacturers, distributors, and administrators of a covered countermeasure intended to combat a public health emergency. *See id.* § 247d-6d(i)(2). A "covered countermeasure" includes drugs, biological products, medical devices, respiratory protective devices, and any other "qualified pandemic or epidemic product." *See id.* § 247d-6d(i)(1).

The PREP Act vests the HHS Secretary with authority to determine that a disease or other threat to health constitutes a public health emergency and to issue a declaration recommending administration of specified countermeasures. *See id.* § 247d-6d(b)(1). *See also id.* § 300hh (authorizing the HHS Secretary to carry out health-related activities to prepare for and respond effectively to public health emergencies). Immunity under the PREP Act is triggered when the HHS Secretary issues a declaration. *See id.* § 247d-6d(b)(1).

In March 2020, the HHS Secretary issued a declaration regarding the COVID-19 pandemic. *See* Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198 (Mar. 17, 2020) ("Declaration"). The Declaration has been amended numerous times to expand its coverage; but, in essence, it recommends the use of various covered countermeasures to combat the COVID-19 pandemic and provides immunity from liability to covered persons administering or using covered countermeasures.

In its motion for summary judgment, SSC contends that it is entitled to immunity from Plaintiff's medical negligence claims because SSC is a "covered person" under the statute, and Plaintiff's claims arise out of or relate to the administration or use of covered countermeasures in response to the COVID-19 pandemic. In simple terms, SSC argues that it is immune from state tort claims arising out of Spells's death because it utilized Personal Protective Equipment at

Westchase, implemented certain COVID-19 protocols at the facility, and provided COVID-19 tests for staff and residents, including Spells.

In opposing summary judgment, Plaintiff argues that PREP Act immunity does not apply because the claims in this lawsuit are based entirely on SSC's alleged inaction—that is, SSC's failure "to take certain action with respect to the care of Edna Spells, which neglect permitted her to contract the COVID-19 illness." Dkt. 35 at 13. Nowhere in the live pleading does Plaintiff allege that Spells's death was causally connected to the administration or use of any covered countermeasure, such as COVID-19 tests, N95 respirators, or face shields. Instead, Plaintiff alleges precisely the opposite—that it was SSC's inaction, rather than action, that caused Spells's death. Indeed, as noted above, Plaintiff complains, among other things, that SSC "[f]ail[ed] to institute an infection control program"; "[f]ail[ed] to implement an infection control program"; "[f]ail[ed] to observe, intervene, and care for" Spells; "[f]ail[ed] to provide the medical and nursing care reasonably required for [Spells's] known conditions"; and "[f]ail[ed] to provide the appropriate supervision and training to its staff and personnel that were providing care to" Spells. Dkt. 1-2 at 5–6.

The PREP Act's "evident purpose is to embolden caregivers, permitting them to administer certain encouraged forms of care (listed COVID 'countermeasures') with the assurance that they will not face liability for having done so." *Estate of Maglioli v. Andover Subacute Rehab. Ctr. I*, 478 F. Supp. 3d 518, 529 (D.N.J. 2020) *aff'd sub nom. Maglioli v. All. HC Holdings LLC*, 16 F.4th 393 (3d Cir. 2021). "Nothing in the language of the Act suggests that it was intended to more broadly displace state-law causes of action for, e.g., malpractice or substandard care." *Id.*

To that end, "[t]he majority of courts considering this issue have held that the PREP Act does not prohibit plaintiffs from bringing state-law tort claims based on alleged failures to use covered countermeasures or failures to implement appropriate safety protocols related to COVID-19, including failures to provide adequate levels of staffing and training to staff." *Lollie v. Colonnades Health Care*

5

*Ctr. Ltd. Co.*, No. CV H-21-1812, 2021 WL 4155805, at *3 (S.D. Tex. Sept. 13, 2021) (collecting cases). *See also Sorace v. Orinda Care Ctr., LLC*, No. 21-CV-05714-EMC, 2021 WL 5205603, at *6 (N.D. Cal. Nov. 9, 2021) ("[T]his kind of inaction – where the plaintiff explicitly faults a nursing home defendant for failing to create and maintain a proper infection control program during the pandemic – do not fall within the scope of the PREP Act."); *Robertson v. Big Blue Healthcare, Inc.*, 523 F. Supp. 3d 1271, 1275, 1281–83 (D. Kan. 2021) (concluding that inaction claims premised on a failure to take preventative measures to stop the spread of COVID-19, including allegations that the defendants failed to "follow proper infection control protocols" and "provide personal protective equipment ('PPE') to staff" do not fall within the scope of the PREP Act); *Lyons v. Cucumber Holdings, LLC*, 520 F. Supp. 3d 1277, 1286 (C.D. Cal. 2021) ("As many courts have held, the PREP Act does not prevent plaintiffs from bringing state law claims based on an alleged failure to use covered countermeasures."); *Sherod v. Comprehensive Healthcare Mgmt. Servs., LLC*, No. 20CV1198, 2020 WL 6140474, at *7 (W.D. Pa. Oct. 16, 2020) (holding that plaintiff's "allegations do not fall within the purview of the PREP Act" where plaintiff's "negligence, misrepresentation, wrongful death and survivor claims [were] not causally connected to [the facility's] use of covered countermeasures" because plaintiff "allege[d] that [the facility's] failure to utilize countermeasures caused the death of the decedent").

Faced with this avalanche of recent case law holding that state-law claims for failure to protect against COVID-19 do not fall within the purview of the PREP Act, SSC relies on an outlier district court opinion from the Central District of California. *See Garcia v. Welltower OpCo Grp. LLC*, 522 F. Supp. 3d 734 (C.D. Cal. 2021). Although the *Garcia* court did hold that the PREP Act applied and preempted claims against a skilled nursing facility, that ruling has been harshly criticized by district courts from sea to shining sea. *See Brown ex rel. Jones v. St. Jude Operating Co., LLC*, 524 F. Supp. 3d 1101, 1111 (D. Or. 2021); *Dupervil v. All.*

6

*Health Operations, LCC*, 516 F. Supp. 3d 238, 253 n.2 (E.D.N.Y. 2021). I join in the chorus of courts and find *Garcia* unpersuasive.

Because Plaintiff's claims are based on SSC's failure to take preventative measures to stop the spread of COVID-19, none of SSC's conduct, as alleged by Plaintiff, qualifies as the administration or use of a covered countermeasure within the meaning of the PREP Act. "[T]he claims herein – typical of claims arising from alleged inadequate care in facilities for the elderly – do not, on their face, fall within the purview of the PREP Act." *Sorace*, 2021 WL 5205603, at *6. As such, I conclude that the PREP Act's immunity does not save SSC from facing Plaintiff's state-law medical negligence claims in federal court.[2]

One final observation. Near the end of her brief opposing summary judgment, Plaintiff suggests that this case should be remanded to state court due to a lack of subject matter jurisdiction. This argument is misguided. In its removal papers, SSC argues removal is proper under both federal question jurisdiction and diversity jurisdiction. Federal question jurisdiction allegedly exists because the PREP Act completely preempts the state law claims. On the diversity jurisdiction front, SSC maintains that complete diversity of citizenship exists as Plaintiff and SSC are citizens of different states. Even if Plaintiff is correct that there is no federal question jurisdiction because there is no complete preemption (and I do think Plaintiff is right on this point), diversity jurisdiction still exists. A federal court thus unquestionably possesses subject matter jurisdiction to adjudicate this case.

## CONCLUSION

For the reasons forth above, I recommend that SSC Houston Southwest Operating Company LLC's Motion for Summary Judgment (Dkt. 26) be **DENIED**.

---

[2] There is one evidentiary issue I need to address. Plaintiff objects to the affidavit of Freddie Green, submitted as part of SSC's summary judgment evidence. Because this evidence does not affect the disposition of the summary judgment motion, I deny the objection as moot.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from receipt to file written objections under Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 4th day of January 2022.

                                            ANDREW M. EDISON
                                  UNITED STATES MAGISTRATE JUDGE